IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| AB PR QOZB IV PROPERTY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:24-cv-00280 |
| | ) | |
| v. | ) | Judge Richardson |
| | ) | Magistrate Judge Newbern |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON | ) | |
| COUNTY, TENNESSEE | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
**[Fed. R. Civ. P. 12(b)(1) & (6)]**

### SUMMARY

Plaintiff alleges that Metro Nashville placed a Permit Lock on its property in November 2021 preventing Plaintiff from being able to develop the property. (Compl., Doc. No. 1, ¶ 25.) Plaintiff brings suit for an unlawful taking under the U.S. and Tennessee Constitutions; for trespass; and for accompanying declaratory relief. (Compl., ¶¶ 42-67.) Because Plaintiff's claims are governed by a one-year limitations period; and because Plaintiff's claims accrued when the Permit Lock was put in place in November 2021; and because this lawsuit was not filed until March 8, 2024, Plaintiff's claims are time-barred. In addition, Plaintiff's trespass claims, or other state-law claims, should be dismissed because Metro Nashville's sovereign immunity remains intact for such claims. Finally, Plaintiff's claims for declaratory relief should be dismissed because, where the underlying claims are not viable, there can be no independent declaratory relief granted.

**BRIEF FACTS**

Plaintiff purchased the subject property at 201 Cowan Street in September 2021. (Compl., Doc. No. 1, ¶¶ 7-8.) Plaintiff intended to develop the Property. (*Id.* at ¶¶ 12-20.) However, according to the Complaint, around November 23, 2021, Metro Nashville placed a "Permit Lock" on Plaintiff's master permit, which restricted all Metro Nashville departments' abilities to issue or approve the master permit or any other permits for the Project. (*Id.* at ¶ 25.) According to the Complaint, the November 23, 2021 Permit Lock "effectively barred (and continues to bar) [Plaintiff] from proceeding with the Project." (*Id.*).

**ARGUMENT**

**I.    Unlawful Taking in Violation of the Federal and State Constitutions.**

A motion to dismiss based on the expiration of the applicable limitations period is analyzed under Rule 12(b)(6). *E.g., Allen v. Fait*, 2023 WL 8101876, *3 (M.D. Tenn. Nov. 21, 2023) (Richardson, J.), appeal filed. Similarly, a motion to dismiss based on lack of jurisdiction is analyzed under Rule 12(b)(1). *Metro. Gov't v. FEMA*, No. 3:22-CV-540, 2024 WL 1337189, *3 (M.D. Tenn. Mar. 28, 2024).

***Federal.*** Plaintiff brings its takings claim directly under the U.S. Constitution, instead of through § 1983. (Compl., Doc. No. 1, Counts III & IV.) However, the Supreme Court just reiterated last week that there is no "built-in cause of action" under the federal Takings Clause when a statute, such as § 1983, provides a cause of action. *DeVillier v. Texas*, No. 22-913, 601 U.S. ---, 2024 WL 1624576, *3 (U.S. Apr. 16, 2024); *see also Roath v. Lee*, No. 3:17-CV-00995, 2019 WL 3066533, *7 (M.D. Tenn. July 12, 2019) (Richardson, J.). Because Plaintiff attempts to bring its takings claim directly under the Constitution, without any reference to § 1983, Plaintiff's federal takings claim may be dismissed for this reason alone. However, even if Plaintiff had brought its

claim under § 1983, a one-year limitations period governs. The statute of limitations for an action under § 1983 is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, that is the one-year limitations period in Tenn. Code Ann. § 28-3-104(a). *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000).

**State.** A one-year statute of limitations also governs Plaintiff's claims under the Tennessee Constitution. Under Tennessee law, "[a]n owner of private property shall commence any proceedings claiming a government action is an unconstitutional taking within the same limitation of actions period as provided in § 29-16-124 for actions commenced pursuant to § 29-16-123." Tenn. Code Ann. § 12-1-206. And Tenn. Code Ann. § 29-16-124 has a one-year statute of limitations. § 29-16-124 (all such actions must be "commenced within twelve (12) months"); *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, n. 7 (Tenn. 2014) (§ 29-16-124 governs the limitations period for takings claims).[1]

Here, as stated above in the Brief Facts, Metro placed its Permit Lock on Plaintiff's Property on or about **November 23, 2021** (Compl., Doc. No. 1, ¶ 25), and this Permit Lock "effectively barred (and continues to bar) [Plaintiff] from proceeding with the Project." (*Id.*) Because the Permit Lock was placed on the Property well over a year before this lawsuit was filed (**March 8, 2024**), then Plaintiff's takings claims are time-barred and should be dismissed.

To the extent that Plaintiff is attempting to utilize the "continuing violation" doctrine (*e.g.*, the Permit Lock "continues to bar" Plaintiff from proceeding, Compl., Doc. No. 1, ¶ 25; Plaintiff "continues to suffer, substantial economic harm," ¶ 36; Metro Nashville "continues to abuse" its

---

[1] State takings claims are analyzed the same way that federal ones are. *E.g., Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 244 (Tenn. 2014).

power, ¶ 37), that doctrine does not alter the one-year limitations period because Plaintiff's alleged injuries are the residual effects of a past decision in November 2021, not new or repeated acts.

Courts in the Sixth Circuit employ the continuing violations doctrine most commonly in Title VII cases, and rarely in § 1983 actions. *E.g., Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). And, the Sixth Circuit has specifically rejected application of the continuing violations doctrine in the "takings" context:

> The instant case is not one in which a series of repeated constitutional violations occurred. Rather, one alleged constitutional violation occurred in the early 1990s that simply was not reversed. As the district court explained, the ODOT defendants' alleged "continued decision" not to rebuild the ramp was merely a manifestation of the alleged prior taking. The plaintiffs' amended claims therefore do not fit within the continuing-violations framework.
> That this case does not fall into the "continuing violations" framework also makes sense. *If this court were to accept the plaintiffs' theory that a taking is continuous until it is reversed, then all takings would constitute "continuing violations," tolling the statute of limitations.* There would effectively be no statute of limitations, and the plaintiffs' theory could easily be extended to many other violations outside of the takings context. *This is not the law*.

*Ohio Midland, Inc. v. Ohio Dep't of Transp*, 286 F. App'x 905, 912 (6th Cir. 2008) (internal citations omitted) (emphasis added).[2]

Here, Plaintiff's allegations do not fit within the "continuing-violations framework." As discussed above, according to the Complaint, Metro issued its Permit Lock on or about November

---

[2] *See* similar holdings in other types of cases, *e.g.*, *Shaaban v. U.S. Citizenship & Immigr. Servs.,* No. 22-3261, 2023 WL 2634367, *2 (6th Cir. Feb. 3, 2023) (immigration appeal) (the "present effect of a past action…is insufficient to trigger the continuing violation exception.") (cleaned up); *and Lutz v. Chesapeake Appalachia*, 717 F.3d 459, 466, n. 4 (6th Cir. 2013) (underpaid gas royalties) ("In applying this exception, the courts have distinguished between 'continuing violations' and 'continuing effects of prior violations,' and clarified that the present effects of past discrimination do not trigger a continuing violation exception.") (cleaned up).

23, 2021. (Compl., Doc. No. 1, ¶ 25.) On or about the next day, November 24, 2021, Plaintiff alleges that it "was forced to suspend the GMP Construction Contract, which left [Plaintiff] potentially liable for significant termination fees owed to the general contractor, and [Plaintiff] terminated the Project cost protection contract provisions." (¶ 28.) Plaintiff alleges that this was due to "Metro Nashville's actions and the resulting impossibility of commencing Project construction." (*Id.*) Plaintiff further alleges that it continued to have conversations with Metro "through the end of 2021 and into 2022." (¶ 27.) Since then, according to the Complaint, Plaintiff has been "wait[ing] for Metro Nashville to lift the Permit Lock." (¶ 31.)

At best, Plaintiff's allegations describe what Plaintiff considers to be an illegal taking which occurred in November 2021 – and injured Plaintiff immediately. (Compl., Doc. No. 1, ¶ 28.) Anything allegedly occurring after the 2021-early 2022 timeframe (¶ 27), while Plaintiff waited for Metro to lift the Permit Lock (¶ 31), would have been the "continual ill effects from an original violation," *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007), and not "continual violations."

Therefore, that doctrine does not apply here, and the Plaintiff's "takings" claims are barred by the one-year statute of limitations.

## II. Trespass.

Plaintiff alleges that Metro's "refusal to issue permits" (Compl., Doc. No. 1, ¶ 43) constitutes an "illegal[ ] inva[sion] [of] Plaintiff's Property by knowingly encroaching on Plaintiff's property interests for self-serving purposes." (¶ 50.)

***Sovereign immunity***. "Governmental entities in Tennessee possess sovereign immunity from suit except in such manner and in such courts as the Legislature may by law direct." *H Grp. Constr. v. City of Lafollette*, No. E2018-00478-COA-R9-CV, 2019 WL 354973, *4 (Tenn. Ct. App.

Jan. 28, 2019) (internal quotation marks omitted). One example where the Legislature has directed exceptions to sovereign immunity is the GTLA, which governs tort claims against local governments. *Id; see also Bakker v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. E2022-00872-COA-R3-CV, 2024 WL 940243, *4-5 (Tenn. Ct. App. Mar. 5, 2024).

Still, under the GTLA, the tort of "intentional trespass" is specifically listed as being one area in which immunity remains in place. Tenn. Code Ann. § 29-20-205(2) (listing: "False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, *intentional trespass*, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights…") (emphasis added). *E.g., Luna v. White Cnty.*, No. M2014-02111-COA-R3-CV, 2015 WL 4119766, *3-4 (Tenn. Ct. App. June 29, 2015).

The same is true for any tort claim arising out of the issuance or denial of any permit, or the failure or refusal to issue or deny any permit (or other similar approvals). Tenn. Code Ann. § 29-20-205(3) (listing: "The issuance, denial, suspension or revocation of, or by the *failure or refusal to issue*, deny, suspend or revoke, *any permit*, license, certificate, approval, order or similar authorization…") (emphasis added).

Accordingly, immunity remains intact for these types of tort claims, and Plaintiff's claims should be dismissed. And to the extent the federal claims discussed above are dismissed and this case boils down to an interpretation of state and local law, only, then such claims should be dismissed from this court for lack of subject-matter jurisdiction under Rule 12(b)(1). *McLemore v. Gumucio*, No. 22-5458, 2023 WL 4080102, *3 (6th Cir. June 20, 2023).

**Statute of limitations.** The limitations period for tort actions against local governments is also one year. Tenn. Code Ann. § 29-20-305(b) (GTLA) (Tort "action must be commenced within

twelve (12) months after the cause of action arises."); *Durham v. Est. of Losleben*, 624 S.W.3d 492, 497 (Tenn. Ct. App. 2020). For the same reasons discussed above in Section I regarding the limitations of actions, even if we could set aside Metro's immunity for the moment, Plaintiff's claims are barred by the one-year statute of limitations.

**III.   Declaratory judgment.**

Plaintiff also seeks a "determination from this Court as to whether (1) Plaintiff has vested rights in the Property and (2) whether Metro Nashville's indefinite Permit Lock is legal." (Compl., Doc. No. 1, ¶ 44.)

However, without any underlying viable cause of action,[3] there can be no declaratory relief. "[T]he absence of a private right of action stops the declaratory judgment action in its tracks. No private right of action means no underlying lawsuit and no declaratory relief." *Tennessee Firearms Ass'n v. Metro Nashville,* No. M2016-01782-COA-R3-CV, 2017 WL 2590209, *9, n. 7 (Tenn. Ct. App. 2017) (cleaned up) (quoting *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 907 (6th Cir. 2014); *Lowery v. Redmond*, No. W2021-00611-COA-R3-CV, 2022 WL 1618218, *7 (Tenn. Ct. App. May 23, 2022) (same).

---

[3]   In addition to the discussions above in Sections I & II that there are no viable causes of action here, Plaintiff also may not rely on any other provision of state or local law cited in its Complaint in order to bring an action against Metro. Tenn. Code Ann. § 1-3-119 (no private right of action exists unless the statute provides express language authorizing such a suit); *Mullins v. State*, 320 S.W.3d 273, 283 (Tenn. 2010) (reaffirming that any legislation waiving sovereign immunity must do so in "plain, clear, and unmistakable terms"); *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007) (principles of immunity apply to municipalities, not just the state).

## CONCLUSION

For these reasons, Plaintiff's allegations do not give rise to viable causes of action against Defendant Metro Nashville, and, therefore, the Complaint should be dismissed.

Respectfully submitted,

/s/ *J. Brooks Fox*
J. BROOKS FOX (#16096)
BENJAMIN A. PUCKETT (#40042)
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6375
brook.fox@nashville.gov
benjamin.puckett@nashville.gov
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been delivered via the CM/ECF electronic filing system to Kate Skagerberg, Mackenzie Keffalos, NELSON MULLINS RILEY & SCARBOROUGH, LLP, 1222 Demonbreun Street, Ste 1700, Nashville, TN 37203, on April 22, 2024.

/s/ *J. Brooks Fox*
J. Brooks Fox