IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| AB PR QOZB IV PROPERTY, LLC, | ) |
| Plaintiff, | ) Case No. 3:24-cv-00280 |
| v. | ) Judge Richardson |
| | ) Magistrate Judge Newbern |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE | ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [DE 21]
[Fed. R. Civ. P. 12(b)(1) & (6)]

### SUMMARY

Plaintiff alleges that Metro placed a Permit Lock on its property in November 2021 preventing any development of the property. (Am. Compl., Doc. No. 21, ¶25.) Plaintiff brings suit under § 1983 for unlawful takings under the U.S. and Tennessee Constitutions; for a due process violation under the U.S. Constitution, based on an alleged property right acquired through estoppel; and for accompanying declaratory relief. (Am. Compl., ¶¶ 52-83.) Because Plaintiff's claims are governed by a one-year limitations period; and because Plaintiff's claims accrued when the Permit Lock was put in place in November 2021; and because this lawsuit was not filed until March 2024; Plaintiff's claims are time-barred. In addition, sovereign immunity bars any claimed property interest based on estoppel; therefore, Plaintiff's due process claim should be dismissed. Finally, Plaintiff's claims for declaratory relief should be dismissed because, where the underlying claims are not viable, there can be no independent declaratory relief.

**BRIEF FACTS**

Plaintiff purchased the Property at 201 Cowan Street in September 2021 with the intent to develop it. (Am. Compl., Doc. No. 21, ¶¶ 7-8; 12-20.) However, according to the complaint, around November 23, 2021, Metro placed a "Permit Lock" on Plaintiff's master permit, which restricted all Metro departments' abilities to issue or approve the master permit or any other permits for the Project. (*Id*. at ¶ 25.) According to the complaint, the November 23, 2021 Permit Lock "effectively barred (and continues to bar) [Plaintiff] from proceeding with the Project." (*Id*.)

**ARGUMENT**

**I. Unlawful Taking in Violation of the Federal and State Constitutions.**

A motion to dismiss based on the statute of limitations is analyzed under Rule 12(b)(6). *E.g., Allen v. Fait*, 2023 WL 8101876, *3 (M.D. Tenn. Nov. 21, 2023) (Richardson, J.), appeal filed. A motion to dismiss based on lack of jurisdiction is analyzed under Rule 12(b)(1). *Metro Gov't v. FEMA*, 2024 WL 1337189, *3 (M.D. Tenn. Mar. 28, 2024) (Richardson, J.).

**A. Applicable statutes of limitations.**

***Federal.*** The statute of limitations for an action under § 1983 is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs*., 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, that is the one-year limitations period in Tenn. Code Ann. § 28-3-104(a). *Hughes v. Vanderbilt Univ*., 215 F.3d 543, 547 (6th Cir. 2000).

***State.*** A one-year statute of limitations also governs Plaintiff's claims under the Tennessee Constitution. Under Tennessee law, "[a]n owner of private property shall commence any proceedings claiming a government action is an unconstitutional taking within the same limitation of actions period as provided in § 29-16-124 for actions commenced pursuant to § 29-16-123."

Tenn. Code Ann. § 12-1-206. And Tenn. Code Ann. § 29-16-124 has a one-year statute of limitations. § 29-16-124 (all such actions must be "commenced within twelve (12) months"); *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, n. 7 (Tenn. 2014) (§ 29-16-124 governs the limitations period for takings claims).[1]

### B. Plaintiff's takings claims are time-barred.

According to the Amended Complaint, Metro placed its Permit Lock on Plaintiff's Property on or about **November 23, 2021** (Am. Compl., Doc. No. 21, ¶ 25), and this Permit Lock "effectively barred (and continues to bar) [Plaintiff] from proceeding with the Project." (*Id*.) Because the Permit Lock was placed on the Property well over a year before this lawsuit was filed (**March 8, 2024**), Plaintiff's takings claims are time-barred and should be dismissed. "The limitations period [for § 1983 claims] begins to run when a plaintiff knows or has reason to know of the injury that is the basis of his action." *Ingram v. Tennessee Dep't of Health*, 2019 WL 4727641, *8 (M.D. Tenn. 2019) (Richardson, J.)

To the extent that Plaintiff is attempting to utilize the "continuing violation" doctrine (*e.g.*, the Permit Lock "continues to bar" Plaintiff from proceeding, Am. Compl., Doc. No. 21, ¶ 25; Plaintiff "continues to suffer, substantial economic harm," ¶ 38; Metro "continues to abuse" its power, ¶ 39), that doctrine does not alter the one-year limitations period because Plaintiff's alleged injuries are the residual effects of a past decision in November 2021, not new or repeated acts.

Courts in the Sixth Circuit employ the continuing violations doctrine most commonly in Title VII cases, and rarely in § 1983 actions. *E.g., Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003). "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects

---

[1] State takings claims are analyzed the same way as federal ones. *E.g., Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 244 (Tenn. 2014).

from an original violation." *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). And, the Sixth Circuit has specifically rejected application of the continuing violations doctrine in the "takings" context:

> The instant case is not one in which a series of repeated constitutional violations occurred. Rather, one alleged constitutional violation occurred in the early 1990s that simply was not reversed. As the district court explained, the ODOT defendants' alleged "continued decision" not to rebuild the ramp was *merely a manifestation of the alleged prior taking*. The plaintiffs' amended claims therefore do not fit within the continuing-violations framework.
> That this case does not fall into the "continuing violations" framework also makes sense. *If this court were to accept the plaintiffs' theory that a taking is continuous until it is reversed, then all takings would constitute "continuing violations," tolling the statute of limitations.* There would effectively be no statute of limitations, and the plaintiffs' theory could easily be extended to many other violations outside of the takings context. *This is not the law*.

*Ohio Midland, Inc. v. Ohio Dep't of Transp*, 286 F. App'x 905, 912 (6th Cir. 2008) (internal citations omitted) (emphasis added).[2]

Here, Plaintiff's allegations do not fit within the "continuing-violations framework." As discussed above, according to the Complaint, Metro issued its Permit Lock on or about November 23, 2021. (Am. Compl., Doc. No. 21, ¶ 25.) The next day, November 24, 2021, Plaintiff alleges that it was "forced to suspend the GMP Construction Contract, which left [Plaintiff] potentially liable for significant termination fees owed to the general contractor, and terminated the Project cost protection contract provisions." (¶ 28.) Plaintiff alleges that this was due to "Metro Nashville's

---

[2] *See, also*, similar holdings in other types of cases, *e.g.*, *Shaaban v. U.S. Citizenship & Immigr. Servs.*, 2023 WL 2634367, *2 (6th Cir. Feb. 3, 2023) (immigration appeal) (the "present effect of a past action…is insufficient to trigger the continuing violation exception.") (cleaned up); *and Lutz v. Chesapeake Appalachia*, 717 F.3d 459, 466, n. 4 (6th Cir. 2013) (underpaid gas royalties) ("In applying this exception, the courts have distinguished between 'continuing violations' and 'continuing effects of prior violations,' and clarified that the present effects of past discrimination do not trigger a continuing violation exception.") (cleaned up).

actions and the resulting impossibility of commencing Project construction." (*Id.*) According to the complaint, Plaintiff has been "wait[ing] for Metro Nashville to lift the Permit Lock." (¶ 32.)

Anything that Plaintiff learned about the "Permit Lock" after November 2021 (¶ 27), while Plaintiff "wait[ed] for Metro Nashville" to lift it (¶ 32), would have been "merely a manifestation of the alleged prior taking." *Ohio Midland*, 286 F. App'x at 912 (6th Cir. 2008), or the "continual ill effects from an original violation," *Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007), not "continual violations."

When pursuing illegal takings claims, plaintiffs "cannot sit on their rights, file suit years later, and then benefit from their lack of diligence." *Evans v. City of Ann Arbor,* 2022 WL 586753, *9 (E.D. Mich. Feb. 25, 2022) (citing *Harrison v. Montgomery Cty.*, 997 F.3d 643, 649 (6th Cir. 2021) (explaining that a statute of limitations defense would be available in such cases), aff'd, 2023 WL 5146731 (6th Cir. Aug. 10, 2023), cert. denied (U.S. Apr. 15, 2024).

In our case, Plaintiff alleges that when the alleged "Permit Lock" went into effect in November 2021, Plaintiff was injured *immediately*. (Am. Compl., Doc. No. 21, ¶ 28.) Plaintiff alleges that it was forced to suspend its construction contract the very next day (¶ 29) and alleges that its damages occurred immediately and "rose daily." (*Id.*) With this in mind, Plaintiff nevertheless waited over two years, until March 2024, before filing suit. This is beyond the one-year limitations period for § 1983 actions, and Plaintiff's "takings" claims are thus time-barred.

## II. Procedural Due Process.

### A. Statute of limitations.

Plaintiff also brings its procedural due process claim under § 1983. (Am. Compl., Doc. No. 21, Count V at ¶¶ 78-83.) As discussed above in Section I, the statute of limitations for § 1983 actions is one year. Because Plaintiff's § 1983 due process claim is based on the allegation that a

"Permit Lock" was imposed upon its Property in November 2021, through procedures that were "inadequate or unfair," denying Plaintiff an "opportunity to be heard" (¶ 82), then Plaintiff's limitations period expired by November 2022. Therefore, for the same reasons discussed above, Plaintiff's § 1983 due process claim is also time-barred. *Ingram*, 2019 WL 4727641, at *8 (M.D. Tenn. 2019) (Richardson, J.) (§1983 procedural due process) (explaining that the limitations period begins to run when a plaintiff knows or has reason to know of the injury that is the basis of his action).

  B.  **No enforceable property interest.**

Also, in order to bring a viable due process claim, a plaintiff must allege a valid property interest. "The Fourteenth Amendment protects an individual from deprivation of life, liberty, or property without due process of law. Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Grise v. Stewart Cnty. Sch. Sys.*, 2021 WL 4864490, *7 (M.D. Tenn. 2021) (Richardson, J.) (cleaned up).

The "property interest" underlying any due process claim must be an *enforceable* property interest. *E.g., Bishop v. Wood*, 426 U.S. 341, 344-45 (1976) (explaining that the property interest must be "enforceable" and that "the sufficiency of the claim of entitlement must be decided by reference to state law")

Here, Plaintiff alleges that the property interest at stake had been obtained through "estoppel principles" arising out of "inducements and assurances" from Metro, which Plaintiff "relied" on to its detriment. (Am. Compl., Doc. No. 21, ¶ 80, *e.g.*, "[Plaintiff] has obtained a vested property right for the intended use of the Property through estoppel principles.") However, as

discussed below, under the doctrine of sovereign immunity, "estoppel" claims are not recognized in Tennessee against local governments.

## C. Sovereign immunity bars Plaintiff's claimed property interest.

Sovereign immunity is derived from the Tennessee Constitution: "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const., Art. I, § 17. In addition, pursuant to statute, "No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state…with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed…" Tenn. Code Ann. § 20-13-102(a). The "State" includes "municipalities of the State." *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007).

"Our state constitution specifically empowers the legislature—not the judiciary—to waive the protections of sovereign immunity." *Bratcher v. Hubler*, 508 S.W.3d 206, 209 (Tenn. Ct. App. 2015), *perm. app. denied* (2016) (citing *Hughes v. Metro. Gov't,* 340 S.W.3d 352, 360 (Tenn. 2011)). "The General Assembly undoubtedly has control over the 'manner…and courts' in which suits against governmental entities may be pursued." *Estate of Bell v. Shelby Cty. Health Care Corp.*, 318 S.W.3d 823, 837 (Tenn. 2010); *Mullins v. State*, 320 S.W.3d 273, 278 (Tenn. 2010) ("[T]he State of Tennessee, as a sovereign, is immune from lawsuits except as it consents to be sued."); *see also Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 849 (Tenn. 2008) ("[S]uits cannot be brought against the State unless explicitly authorized by statute.").

In *Davidson*, the Tennessee Supreme Court stated, "We will not find a waiver of the State's sovereign immunity unless there is a statute clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation." *Davidson*, 227 S.W.3d at 19 (internal

quotation marks omitted) (emphasis added); *see also Mullins*, 320 S.W.3d at 283 (reaffirming that any legislation waiving sovereign immunity must do so in "plain, clear, and unmistakable terms").

Following this same reasoning, in 2018, the Tennessee Court of Appeals ruled that a plaintiff's equitable claims against Metro, such as "promissory estoppel" could not proceed in the face of a sovereign-immunity defense because there was no legislative enactment that "clearly and unmistakably" showed that the government had consented to such claims. *Harakas Construction v. Metro Gov't.*, 561 S.W.3d 910, 926 (Tenn. Ct. App. 2018) (relying upon the Tennessee Supreme Court case law cited above) ("Harakas has pointed to nothing that shows that Metro has waived its sovereign immunity."). That is, the *Harakas* court reaffirmed the principles from cases such as *Mullins*, leaving sovereign immunity intact. The court held, "We will not find a waiver of sovereign immunity in the absence of an enactment clearly and unmistakably disclosing an intent upon the part of the Legislature to permit such litigation." *Id*. at 926 (cleaned up).

"So then, Harakas stands for the proposition that unless the plaintiff can show a legislative enactment in which the defendant city unmistakably consents to be sued, claims of implied contract, unjust enrichment, and promissory estoppel may be barred by sovereign immunity." *Whitworth v. City of Memphis*, 2023 WL 2747075, *8 (Tenn. Ct. App. 2023), *appeal denied* (Aug. 9, 2023).

Applying the doctrine of sovereign immunity here means that Metro is immune to claims based on "estoppel principles," since there is no legislative enactment that "clearly and unmistakably" discloses an intent to be sued on such principles. Again, "the waiver of sovereign immunity must be explicit, not implicit." *Colonial Pipeline*, 263 S.W.3d at 853 (Tenn. 2008); Davidson, 227 S.W.3d at 19 (Tenn. 2007) (any such legislative enactment must "clearly and unmistakably" disclose an "intent upon the part of the Legislature to permit such litigation").

Accordingly, Plaintiff's claimed property interest arising out of detrimental reliance, or "assurances" it received, or other "estoppel principles" (Am. Compl., Doc. No. 21, ¶ 80), are not recognized as enforceable property interests as against local governments, under Tennessee law. *E.g., Bishop v. Wood*, 426 U.S. at 344-45 (1976) (stating that "the sufficiency of the claim of entitlement must be decided by reference to state law" – it must be an "enforceable" property right).

Because Plaintiff has not alleged a valid property interest under Tennessee law that would support its § 1983 due process claim, Plaintiff's due process claim should be dismissed.

## III. Declaratory judgment.

Plaintiff also seeks a "determination from this Court as to whether (1) Plaintiff has vested rights in the Property and (2) whether Metro Nashville's indefinite Permit Lock is legal." (Am. Compl., Doc. No. 21, ¶ 54.)

However, without any underlying viable cause of action,[3] there can be no declaratory relief. "[T]he absence of a private right of action stops the declaratory judgment action in its tracks. No private right of action means no underlying lawsuit and no declaratory relief." *Tennessee Firearms Ass'n v. Metro Nashville,* 2017 WL 2590209, *9, n. 7 (Tenn. Ct. App. 2017) (cleaned up) (quoting *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 907 (6th Cir. 2014); *Lowery v. Redmond*, 2022 WL 1618218, *7 (Tenn. Ct. App. 2022) (same).

---

[3] In addition to the discussions above in Sections I & II that there are no viable causes of action here, Plaintiff also may not rely on any other provision of state or local law cited in its Amended Complaint in order to bring an action against Metro. Tenn. Code Ann. § 1-3-119 (no private right of action exists unless the statute provides express language authorizing such a suit); *Mullins v. State*, 320 S.W.3d 273, 283 (Tenn. 2010) (reaffirming that any legislation waiving sovereign immunity must do so in "plain, clear, and unmistakable terms"); *Davidson v. Lewis Bros. Bakery*, 227 S.W.3d 17, 19 (Tenn. 2007) (principles of immunity apply to municipalities, not just the state).

Furthermore, to the extent the federal claims discussed above are dismissed and this case boils down to an interpretation of state and local law, only, then such claims should be dismissed from this court for lack of subject-matter jurisdiction under Rule 12(b)(1). *McLemore v. Gumucio*, 2023 WL 4080102, *3 (6th Cir. June 20, 2023).

## CONCLUSION

For these reasons, Plaintiff's allegations do not give rise to viable causes of action against Defendant Metro, and, therefore, the Amended Complaint should be dismissed.

Respectfully submitted,

/s/ *J. Brooks Fox*
J. BROOKS FOX (#16096)
BENJAMIN A. PUCKETT (#40042)
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6375
brook.fox@nashville.gov
benjamin.puckett@nashville.gov
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been delivered via the CM/ECF electronic filing system to Kate Skagerberg, Mackenzie Keffalos, NELSON MULLINS RILEY & SCARBOROUGH, LLP, 1222 Demonbreun Street, Ste 1700, Nashville, TN 37203, on May 31, 2024.

/s/ *J. Brooks Fox*
J. Brooks Fox